**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 25-2320

CLAUDIA LISSETH ORELLANA-RAMOS; N.A.R.O.; R.A.R.O.,

Petitioners,

v.

TODD BLANCHE, Acting Attorney General,

Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued:  May 6, 2026                          Decided:  August 10, 2026

Before QUATTLEBAUM, BENJAMIN, and BERNER, Circuit Judges.

Petition granted; order remanded by published opinion. Judge Berner wrote the opinion, in which Judge Quattlebaum and Judge Benjamin joined. Judge Quattlebaum wrote a concurring opinion.

**ARGUED:**  Megan Herndon, MURRAY OSORIO PLLC, Fairfax, Virginia, for Petitioners.  Kristen A. Giuffreda, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Alaina Taylor, MURRAY OSORIO PLLC, Fairfax, Virginia, for Petitioners.  Brett A. Shumate, Assistant Attorney General, Shelley R. Goad, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent

BERNER, Circuit Judge:

Asylum and withholding of removal are related but distinct forms of relief under the Immigration and Nationality Act. Both allow a noncitizen to remain in the United States if she can demonstrate that she is likely to experience persecution on account of her race, religion, nationality, political opinion, or membership in a particular social group if she were removed from the country. Because a family qualifies as a particular social group, persecution on account of membership in a family can form the basis of a claim for asylum or withholding of removal.

Petitioner Claudia Lisseth Orellana-Ramos, a native and citizen of El Salvador, applied for both forms of relief from removal on behalf of herself and her minor children asserting that she suffered persecution on account of her membership in her family. Specifically, she asserts that she was targeted because her former romantic partner aggrieved another man, who in turn threatened retribution against her. An immigration judge rejected Orellana's applications as did the Board of Immigration Appeals, which affirmed the immigration judge's denial, finding that the persecution she experienced was personal in nature and could not, therefore, form the basis of the relief she sought.

In her petition for review, Orellana argues that the immigration judge and the Board of Immigration Appeals erred by focusing on the reasons the aggrieved individual targeted Orellana's former romantic partner, rather than on the reasons he threatened Orellana and her children, which was because of her membership in her family. We agree. Accordingly, we grant Orellana's petition for review and remand for further proceedings on her applications for relief.

## I.

Claudia Lisseth Orellana-Ramos and her two minor children are natives and citizens of El Salvador. After they entered the United States without authorization, they were placed in removal proceedings. Orellana conceded that she was removable and applied for asylum and withholding of removal.[1] Her children are included in her applications as derivative beneficiaries.

The applicant bears the burden to show eligibility for asylum and withholding of removal. *Quintero v. Garland*, 998 F.3d 612, 630 (4th Cir. 2021). "Generally speaking, asylum eligibility and withholding-of-removal eligibility share mostly identical requirements."[2] *Id.* at 631. To obtain relief, a petitioner must demonstrate past persecution or a well-founded fear of future persecution on account of a statutorily protected ground. *Id.* at 630–31. These grounds include persecution on the basis of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A) (asylum), 1231(b)(3)(A) (withholding of removal). It is well-established that membership

---

[1] Orellana also applied for protection under the Convention Against Torture. She does not raise this claim in her petition for review; thus we do not address it further.

[2] The two forms of relief differ as to the requisite standard of proof. The standard of proof for asylum is less stringent, requiring an applicant to show a reasonable possibility of persecution. *Quintero*, 998 F.3d at 630. The standard of proof for withholding of removal is higher, requiring that an applicant show persecution is more likely than not. *Id.* This difference is not relevant to Orellana's claims on appeal, however. That is because our determination turns only on the nexus requirement, which is the same for both forms of relief. *See id.*

in a family qualifies as membership in a particular social group. *Crespin-Valladares v. Holder*, 632 F.3d 117, 125–26 (4th Cir. 2011).

This case concerns the requirement that persecution be "on account of" a statutorily protected ground. This is referred to as the nexus requirement. *Madrid-Montoya v. Garland*, 52 F.4th 175, 179 (4th Cir. 2022). Analysis of the nexus requirement is the same for asylum and withholding of removal. *Salgado-Sosa v. Sessions*, 882 F.3d 451, 456–57 (4th Cir. 2018). The nexus requirement is met when an applicant's protected ground is at least one central reason for the applicant's past persecution or well-founded fear of future persecution. *Madrid-Montoya*, 52 F.4th at 179.

Orellana contends that she and her children suffered persecution, and thus fear future persecution, on account of their membership in a family comprised of Orellana, her children, and their father. We begin by recounting Orellana's testimony in support of her applications and then describe the proceedings that followed.

A.

Orellana testified in support of her applications for relief at a hearing before an immigration judge (IJ). She recounted the following course of events.

Orellana lived in El Salvador with Naun Cristobal Rogel, her then-romantic partner who is also the father of her two children. While the two were living together, Rogel had an affair with the wife of another man, Franklin Eduardo Canjora. After Canjora discovered the affair, he went to Orellana's house several times with a gun and threatened to harm Orellana and her children. Canjora told Orellana that Rogel and his family would "pay the

4

price" for what Rogel had done. Parties' Joint Appendix (J.A.) 167. During one of these visits, Canjora's threats escalated and became physical when he pushed Orellana.

Afraid for her safety and that of her children, Orellana contacted the police who told her that they could not do anything unless "they saw blood." *Id.* at 166. They simply advised her not to leave her house. *Id.* Fearing Canjora's ongoing threats and in light of the police's failure to protect their family, Orellana and Rogel decided to move with their two children to another area in El Salvador about an hour's drive away. After approximately one month in their new home, the family saw Canjora on the street. Though they managed to avoid interacting with him directly, they continued to fear for their safety.

Eventually, the family fled to the United States. Rogel was subsequently removed to El Salvador, and Orellana no longer maintains contact with him. Orellana has not heard from Canjora, or otherwise interacted with him, since she arrived in the United States more than a decade ago.

## B.

After the hearing, the IJ denied Orellana's asylum and withholding of removal claims. The IJ set forth the applicable legal standards. Orellana bore the burden to show that she had suffered persecution, or had a well-founded fear of future persecution, on account of a protected characteristic. The IJ further recognized that membership in a family qualifies as a particular social group for both forms of relief.

The IJ found Orellana credible, describing her testimony as "responsive, candid, plausible, and detailed." J.A. 95. The IJ determined, however, that Orellana failed to show

5

the requisite nexus between the asserted persecution—Canjora's threats—and a protected ground. In conducting the nexus analysis, the IJ concluded that Canjora's threats to harm Orellana and her children were threats "on account of" a "personal dispute" between the two men. *Id.* at 97. Because fears over purely personal matters do not qualify as a protected ground to establish eligibility for asylum and withholding of removal, the IJ denied Orellana's claims for relief.

Orellana appealed to the Board of Immigration Appeals (BIA). Among other arguments, she contended that the IJ committed legal error in its nexus analysis. Orellana asserted that Canjora's threats against her were not on account of a personal dispute between Canjora and Rogel, but rather on account of Orellana's and her children's membership in their family, a cognizable particular social group.

The BIA affirmed the IJ's opinion and dismissed the appeal, adding minimal reasoning of its own. With respect to the nexus requirement, the BIA was "not persuaded that [Orellana] established that the familial relationship in this circumstance was more than an incidental, tangential, superficial, or subordinate reason underlying the threats." *Id.* at 4.

Orellana timely petitioned for review.

## II.

Where, as here, "the BIA has 'essentially adopted the IJ's opinion while adding some of its own reasoning,'" we review both decisions. *Mulyani v. Holder*, 771 F.3d 190, 196 (4th Cir. 2014) (quoting *Thu v. Holder*, 596 F.3d 994, 998 (8th Cir. 2010)). We review

6

*de novo* the question of whether the BIA and IJ applied the correct legal test. *Salgado-Sosa*, 882 F.3d at 456. Factual findings are reviewed for substantial evidence and are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Salgado-Sosa*, 882 F.3d at 456.

Orellana contends that the BIA and IJ legally erred in analyzing the nexus requirement. More specifically, she argues that their focus on the reasons Canjora targeted *Rogel*, rather than the reason Canjora threatened *her*, contravenes circuit precedent. Orellana further contends that, applying the correct legal test, the record compels the conclusion that she was persecuted on account of her familial relationship. We agree.

As previously explained, an applicant for asylum or withholding of removal must show persecution or a well-founded fear of future persecution on account of a protected ground. *Marvin A.G. v. Garland*, 72 F.4th 22, 27 (4th Cir. 2023). Family membership qualifies as such a ground. *Id.* The nexus requirement is met where membership in the protected social group is "'at least one central reason for' the feared persecution." *Crespin-Valladares*, 632 F.3d at 127 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). This analysis must focus on the reasons the persecutor threatened the petitioner, not another individual or group of individuals. *Marvin A.G.*, 72 F.4th at 28. Placing the focus on why the persecutor threatened another person, including others in the petitioner's family, constitutes legal error. *Id.*

That error occurred here. The IJ found that Orellana "fears retribution over a purely personal dispute between her former partner and [Canjora]." J.A. 97. The IJ then concluded that there was no evidence Orellana feared persecution on the basis of any ground "other

7

than the same personal dispute." *Id.* The reason Canjora targeted Rogel—or even whether Canjora targeted Rogel at all—bears no relevance to the question of whether Orellana showed a nexus between her allegations of persecution and her family membership. The BIA made the same legal error by failing to consider the reason Canjora targeted Orellana.

Applying the correct legal test, the record compels the conclusion that the nexus requirement was met. Family membership need not be the *only* reason for the persecution. Rather, the familial relationship need only be "at least one central reason." *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 950 (4th Cir. 2015). The nexus requirement is met even where there is a "mixed motive" and "the statutorily protected ground comprises only part of the persecution." *Cedillos-Cedillos v. Barr*, 962 F.3d 817, 825 (4th Cir. 2020) (quoting *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009)). Here the relevant nexus has been shown. Orellana would not have been persecuted by Canjora absent her familial relationship with Rogel.

*Salgado-Sosa v. Sessions*, 882 F.3d 451 (4th Cir. 2018), is instructive. There, a petitioner applied for asylum alleging persecution on account of his membership in his family. *Id.* at 457. The petitioner's stepfather had refused to pay extortion money to a gang, and petitioner argued that the gang targeted *him* because of his familial relationship with his stepfather. *Id.* at 455. The IJ and BIA denied his asylum application, concluding that the gang was not motivated by the petitioner's family ties, but rather by financial gain and revenge. *Id.* at 457. This court disagreed, reasoning that the record "manifestly establishe[d]" that the gang had threatened the petitioner on account of his familial relationship. *Id.* The petitioner was never himself involved in financial interactions with

8

the gang. *Id.* The gang nevertheless targeted him because of his stepfather's actions. *Id.* Accordingly, this court held that the petitioner's "relationship to his stepfather" was "indisputably 'why [he], and not another person, was threatened.'" *Id.* at 458 (quoting *Hernandez-Avalos*, 784 F.3d at 950).

The circumstances here are similar. Though Canjora may have targeted Rogel because of a personal dispute, Orellana had no dispute with Canjora. Canjora's sole reason for threatening her was her relationship with Rogel. Indeed, Canjora made this clear when he threatened Orellana by saying that "because of [Rogel, she would] pay the price." J.A. 167.

The Government rejects this conclusion, arguing that the IJ and BIA correctly concluded that Orellana was targeted due to a personal dispute, rather than on account of her familial relationship. Because a purely personal dispute cannot give rise to relief from removal, the Government reasons, Orellana's applications for asylum and withholding of removal were properly denied. We disagree.

While persecution based on purely personal matters cannot be the basis for relief from removal independent from any protected grounds, *Huaman-Cornelio v. BIA*, 979 F.2d 995, 999–1000 (4th Cir. 1992), the cases involving such personal matters are distinguishable. They involve circumstances where record evidence made clear that the persecution was motivated by "private and purely personal" reasons independent from any protected ground. *See Velasquez v. Sessions*, 866 F.3d 188, 196 (4th Cir. 2017) (reasoning that persecution was motivated by a personal desire to obtain custody over the petitioner's child, not by a familial relationship); *Toledo-Vasquez v. Garland*, 27 F.4th 281, 287 (4th

9

Cir. 2022) (reasoning that persecution was motivated by the petitioner's repeated "intervening" in her persecutor's marriage, not by a familial relationship). Here the record evidence compels the conclusion that Orellana suffered persecution because of her membership in a family, a protected ground.

## III.

For the reasons above, we grant Orellana's petition for review and remand for further proceedings consistent with this opinion.

*PETITION FOR REVIEW GRANTED;*
*REMANDED*

10

QUATTLEBAUM, Circuit Judge, concurring:

Claudia Orellana-Ramos' partner slept with another woman. That woman's scorned husband, Franklin Canjora, then threatened not just Orellana's partner, but Orellana as well. Is this persecution "on account of" Orellana's "membership in a particular social group," as the asylum statute requires?* 8 U.S.C. § 1101(a)(42)(A). Under our precedent, the answer is yes. We have recognized families as particular social groups. *See, e.g.*, *Marvin A.G. v. Garland*, 72 F.4th 22, 27 (4th Cir. 2023). And we have said that for a petitioner to show that her membership in a particular social group is "at least one central reason" for her persecution, 8 U.S.C. § 1158(b)(1)(B)(i), it need not be "*the* central reason or even a dominant central reason for persecution"—it just "cannot be an 'incidental, tangential, superficial, or subordinate' reason," *Quinteros-Mendoza v. Holder*, 556 F.3d 159, 164 (4th Cir. 2009) (emphasis in original) (quoting *In re J-B-N-*, 24 I&N Dec. 208, 214 (B.I.A. 2007)). Given those holdings, the Board erred in determining that Orellana had not demonstrated a nexus between her membership in a particular social group and persecution. So, I join in the panel opinion.

I write separately to address what should happen next. Historically, when reviewing a Board decision, we've only considered the grounds the Board articulated. *See, e.g.*, *Alfaro-Zelaya v. Bondi*, 157 F.4th 587, 595 (4th Cir. 2025) ("Because the BIA denied

---

* Someone who "cannot meet his burden of proof on an asylum claim . . . necessarily cannot meet his burden of proof on a withholding of removal claim." *Zelaya v. Holder*, 668 F.3d 159, 161 (4th Cir. 2012). So, any questions about Orellana's eligibility for asylum are also questions about her eligibility for withholding of removal.

Alfaro-Zelaya relief only on nexus grounds, that's the only element of the standard we need to address on appeal."). And when we've found error, we've remanded the case to the Board for further proceedings instead of asking whether the Board's decision might stand on other grounds. *See, e.g.*, *id*. at 596–97; *Nken v. Holder*, 585 F.3d 818, 822 (4th Cir. 2009) ("[W]hen a BIA order does not demonstrate that the agency has considered an issue, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Immigr. & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam))).

To justify these remands, we've invoked *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194 (1947). *See, e.g.*, *Alfaro-Zelaya*, 157 F.4th at 593 (citing *Nken*, which in turn quotes *Chenery* for the proposition that "[w]e can affirm the BIA only on 'the grounds upon which the agency acted'"); *Cordova v. Holder*, 759 F.3d 332, 338 (4th Cir. 2014) (same). In *Chenery*, the Supreme Court said a "reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency" and may not "affirm the administrative action by substituting what it considers to be a more adequate or proper basis." 332 U.S. at 196. Yet the Administrative Procedure Act, enacted after *Chenery*, says a court reviewing agency action shall give "due account" to "the rule of prejudicial error," also known as harmless error. 5 U.S.C. § 706.

How do we square *Chenery* with the APA? The Court recently addressed this question in *Food & Drug Administration v. Wages & White Lion Investments, L.L.C.*, 604 U.S. 542 (2025). While it did "not attempt to provide a complete answer to this vexing problem," the Court provided two examples in which remand may be unnecessary: (1)

12

"when an agency's decision is supported by a plethora of factual findings, only one of which is unsound," *id.* at 590, and (2) when an agency would be required to take a particular action on remand, *id.* at 589. And the Court did not claim that these examples "exhaust the universe of exceptions" to *Chenery*'s remand rule. *Id.* at 590.

I say all of that because, although the Board erred, Orellana may nonetheless be ineligible for asylum and, by extension, withholding of removal. Even if an asylum applicant establishes past persecution due to his membership in a particular social group, "the agency must deny an applicant's claim if 'there has been a fundamental change in circumstances such that he no longer has a well-founded fear of persecution' or if he 'could avoid future persecution by relocating to another part of his country of nationality and under all the circumstances, it would be reasonable to expect him to do so.'" *Ullah v. Garland*, 72 F.4th 597, 602 (4th Cir. 2023) (quoting 8 C.F.R. § 1208.13(b)(1)(i)) (citation modified). Also, since Canjora is not a government actor, Orellana must show El Salvador "is unable or unwilling to control" him. *Orellana v. Barr*, 925 F.3d 145, 151 (4th Cir. 2019) (quoting *Hernandez-Avalos v. Lynch*, 784 F.3d 944, 949 (4th Cir. 2015)). And *White Lion* might permit us to deny Orellana's petition on these alternative grounds.

But the government hasn't asked us to decide this case on grounds other than the Board's nexus determination. So, without any briefing on whether *White Lion* permits us to deny Orellana's petition on any other grounds, or on whether such alternative grounds can be waived, I agree with my colleagues that remand is the correct course of action in this case. Moving forward, however, parties should recognize that *White Lion* permits us

13

to consider whether the record supports affirmance on some ground other than the one the agency relied upon and fashion their arguments accordingly.